[Civ. No. 19695.   Second Dist., Div. One.   Jan. 20, 1954.]

LAWRENCE G. MITCHELL, Appellant, v. SOUTHERN CALIFORNA GAS COMPANY (a Corporation) et al., Respondents.

694

Demler & Eckert and Charles E. Samuel for Appellant.

T. J. Reynolds and Neil G. Locke for Respondent Southern California Gas Company.

W. P. Smith for Respondent Cartwright.

DRAPEAU, J.—Plaintiff, Lawrence G. Mitchell, was driving an automobile south on Grove Street, in San Bernardino County. Defendant, James Thomas Cartwright, was driving another automobile east on Merrill Street.

At the intersection of Grove and Merrill there was a boulevard stop, which it was plaintiff's duty to observe and to obey. Merrill was a through street.

The intersection was in open farming country; but there were eucalyptus and walnut trees on plaintiff's right-hand side, on the west side of Grove. These trees interfered somewhat with the vision of both drivers across the field, as they approached the intersection. Both drivers had been through the intersection many times.

It was late afternoon, but not dark. The weather was clear and the pavements were dry.

The two automobiles collided within the intersection.

Damages from the collision would not have been serious, except that plaintiff's automobile was knocked toward the southeast corner of the intersection, and over a gas meter installation maintained by defendant, Southern California Gas Company.

The meter installation consisted of a riser coming from an underground service pipe, two regulators, and a meter. Around the installation was a "three-leg" guard, built of 2-inch pipe. The meter installation was in cultivated ground, beyond a roadway gutter, and an earthen bank or shoulder, but was within the boundaries of the highway.

The projection of plaintiff's automobile over the meter caused a break in the gas pipe (riser) below ground. Escaping natural gas from the broken riser caught fire; and, like a giant blowtorch, burned through the floor of plaintiff's car, and burned plaintiff, who was sitting dazed in the driver's seat.

Plaintiff was terribly injured. He was in the hospital for months, unable to work for more than a year, and will probably never fully recover.

This action was tried by a jury, which rendered a verdict for plaintiff against both defendants for $154,396.92.

Judgment was entered in accordance with the verdict.

Then the trial judge ordered judgment notwithstanding the verdict, as to the defendant driver, Mr. Cartwright; and, on the ground of insufficiency of the evidence, ordered a new trial as to the defendant gas company.

Appeals from both orders have been consolidated, and have been argued and briefed together.

As the rules are essentially different, each appeal will be discussed separately.

*The appeal from the judgment notwithstanding the verdict.*

The fundamental rule as to when a trial judge may order judgment notwithstanding the verdict of a jury is repeated in almost the same language in many cases:

█ A judgment notwithstanding the verdict may properly be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is a determination that there is no evidence sufficiently substantial to support the verdict. (*Champion* v. *Bennetts,* 37 Cal.2d 815 [236 P.2d 155]; *Washington* v. *City & County of San Francisco,* 111 Cal.App.2d 368 [244 P.2d 774]; *Estate of Lekos,* 109 Cal. App.2d 42 [240 P.2d 387]; *Estate of Wellauer,* 107 Cal. App.2d 268 [236 P.2d 906]; *Tremeroli* v. *Austin Trailer Equipment Co.,* 102 Cal.App.2d 464 [227 P.2d 923]; *Howell* v. *Ducommon Metals & Supply Co.,* 101 Cal.App.2d 163 [225 P.2d 293]; and see 28 West's California Digest, Judgments, Key 199, (3.10).)

With the rule in mind let us turn to the evidence.

█ The defendant, Mr. Cartwright, two passengers in his car, and a witness who was coming toward the intersection from the east, all testified that plaintiff, Mr. Mitchell, failed to make the boulevard stop; that he went into the intersection

without stopping and at a speed of more than 30 miles an hour.

An officer of the California Highway Patrol who interviewed Mr. Mitchell at the hospital testified that he admitted he didn't make the boulevard stop. And the records of the justice's court show a plea of guilty by Mr. Mitchell to the criminal offense of not stopping at the intersection. However, there is not much probative value in the last two items of evidence. The testimony of the traffic officer as to the admission of Mr. Mitchell, when he was in the hospital, incoherent from pain, and swathed in bandages, does not commend itself to that method of getting evidence, or of instituting criminal proceedings, by an officer of the state. Mr. Mitchell's plea of guilty was made by his father, without his knowledge.

Of course, if this were all of the evidence in the case, plaintiff's own contributory negligence, as a matter of law, would bar any recovery by him against either defendant.

But plaintiff's testimony is to the contrary. Portions of it are as follows:

On direct examination:

"Q. And what did you do as you came to Merrill? Describe just what you did. A. Well, I slowed to a stop, the road looked clear, so I put it in gear, went on across, and well, I looked again to my left.

"Q. Have you finished? A. Yes.

"Q. Did you actually bring your automobile to a complete stop before you came into Merrill? A. Well, as I remember it, it was very near to a stop.

"Q. You remember specifically whether you actually stopped or nearly stopped, or just what? A. I can't tell whether I came to an absolute dead stop."

.   .   .   .   .   .   .   .   .   .   .   .   .

On cross-examination:

"Q. (By Mr. Smith) Now, you think that you stopped you car, although I believe you said you were not certain whether you came to a complete stop or just rolled through; is that right? A. I think I came to a stop.

"Q. You think you did? A. Yes."

.   .   .   .   .   .   .   .   .   .   .   .   .

Again:

"Q. Place that in the street where you think you were when you came to a stop, then make us a red line around it.

(Witness complies with request of counsel.)''

.    .    .    .    .    .    .    .    .    .

And again:

''Q. You, of course, came to a stop there because then you considered it would be dangerous to go on through without? A. To go through there without coming to a stop and looking.

''Q. Considering the obstructions to the view and considering the fact that there was no stop sign on Merrill, it would be foolish for anybody to go on across there without stopping and looking? A. That is right.''

It was the duty of the jury to consider all the circumstances, and to find whether the negligence of any party to the action contributed to the accident. It was the jury's duty to determine whether Mr. Cartwright failed to obey the basic speed law, or to keep a proper lookout for other vehicles approaching and crossing the intersection, or to observe any of the duties of a prudent driver in the operation of a motor vehicle at the time and place. Skid marks at the scene, the position of the vehicles after the accident, all the testimony, and all the other relevant facts were for the jury. If the verdict finds substantial support in the evidence, a judgment notwithstanding the verdict may not be granted by the trial court.

Moreover, it is only when the testimony of even one witness, in the light of the undisputed facts, is inherently so improbable and impossible of belief as to constitute no evidence at all that that testimony may be disregarded and the verdict of the jury set aside. (See 4 Cal.Jur.2d, p. 484, § 605 et seq.)

Whether one is guilty of contributory negligence is usually a question of fact for the jury. It becomes a question of law for the decision of the court only when the facts are undisputed, and even then, only when, on those facts, reasonable minds can draw but one conclusion on the issue of plaintiff's negligence. (*Shiya* v. *Reviea, ante,* p. 155, 160 [264 P.2d 190].)

Therefore in this case it was beyond the power of the trial judge to order judgment notwithstanding the verdict.

*The order granting a new trial to defendant gas company.*

This phase of the case is to be determined in accordance with entirely different rules. The many decisions which hold that on a motion for a new trial the trial judge should consider the proper weight to be given to the evidence, whether

it be conflicting or not, are set forth and reviewed, and the law stated by our Supreme Court in *People* v. *Robarge,* 41 Cal.2d 628 [262 P.2d 14].

In that case the basic rule for the guidance of the judge who hears the testimony is set forth at page 633:

"While it is the exclusive province of the jury to find the facts, it is the duty of the trial court to see that this function is intelligently and justly performed, and in the exercise of its supervisory power over the verdict, the court, on motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict."

Plaintiff's argument that the defendant gas company was negligent as a matter of law is without substance. Negligence of the gas company is a question of fact.

Consideration should be given to all the circumstances of the accident; whether contributory negligence, if any, bars plaintiff's recovery; and whether the maintenance of the guard pipes, meter, and gas pipes within the highway right-of-way was, in all the circumstances present on the date of the accident, the conduct of a reasonably prudent person, having regard to the dangerous nature of natural gas, the position and construction of the meter installation, and the volume of vehicular traffic at the intersection.

The judgment notwithstanding the verdict is reversed.

The order granting a new trial as to the defendant, Southern California Gas Company, is affirmed.

White, P. J., and Doran, J., concurred.